IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>PEGGY SUE SMITH,<br><br>                Respondent,<br><br>   v.<br><br>SCOTT WILLIAM SMITH,<br><br>               Appellant. | No. 83308-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — When Hailey Smith transferred from Grays Harbor College (GHC) to Washington State University (WSU), her father, Scott Smith, moved to modify an order requiring that he contribute to Hailey's[1] postsecondary educational needs. Scott repeated an argument from a prior hearing that Hailey should use all her financial aid and scholarships before the court calculates what the unmet needs are that the parents should cover. The trial court found Scott did not show a sufficient change in circumstances to justify modifying the court's order. Because the record lacked a showing of an uncontemplated substantial change in circumstances, we agree and affirm.

---

[1] Because members of the Smith family share the same last name, we refer to family members by their first name for clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

## FACTS

Scott and Peggy Smith dissolved their marriage in Thurston County in 2013. At that time, the trial court ordered Scott to pay child support, which was later modified by Pacific County Superior Court when Peggy relocated to Pacific County. The order reserved the issue of postsecondary educational support.

In June 2019, Peggy filed a petition to modify the child support order to address postsecondary educational support for their eldest child, Hailey. In response to Peggy's request, Scott asked the court to apply all of Hailey's college scholarships before determining the amount the parents should pay for the remainder outstanding expenses. The court disagreed. In July 2019, the trial court entered an order granting postsecondary educational support. The relevant portions state:

a. Hailey shall be responsible for 1/3 of her expenses. She shall utilized [sic] her grant and scholarship and work income to cover her share of her college expenses.

b. The parents shall be responsible, proportionally, for the remaining 2/3 of PSES; 72% to the father and 28% to the mother.

c. If the child uses scholarship funds that exceed her 1/3 share of the expense, then all parties will gain a proportional benefit in a net reduction of their share of the PSES obligation.

d. The child is currently planning on attending GHC and will be living at home with her mother. The estimated cost for a year at GHC (upon which the division of responsibility is based) is $18,468.00; Hailey's share is $6,156.00, Mother [sic] share is $3,444.00, and Father's share is $8,868.00.

e. As long as Hailey lives in her mother's home the Father's monthly support payment shall be paid directly to Mother; paid at the same time of the remaining child support obligation, except as may be noted below.

2

     f.   The Father's share (72% of the parent's 2/3's responsibility) is $739.00 per month, but is reduced by $33.76 per month to $705.24 per month in recognition of his proportional share for credit as noted in paragraph c. above.

The order also provided when the parties could motion for review:

> If Hailey transitions to a four year school or other qualified program upon finishing or leaving GHC, and the parties are unable to cooperate and agree upon what the future PSES shall look like, then either parent may bring this issue back before the court upon a motion, only, for review and appropriate adjustment; a new Petition is not required.

Scott did not appeal the order.[2] In August 2020, Scott filed a "Motion to Adjust Child Support Order." Substantively, it was a motion to modify the postsecondary educational support order now that Hailey was transferring from GHC to WSU and had obtained additional scholarships. The parties disputed what the one-year cost of attending WSU would be for Hailey, who was going to be living at home with her mother just as she had when she attended GHC. Scott argued that regardless if the cost was about $21,000 as he proposed or closer to $25,000 according to Peggy,

> Hailey has enough in scholarships, grants and savings from un-used scholarships and grants to cover the entirety of that. We feel that the money should be used this year, while she has it. If it's exhausted this year, then we can come back next year and make whatever adjustments. I think everyone is on the same page, that both mother and father have enough earnings to help her to the extent she needs it. And so, using the funds now shouldn't be problematic. And, in fact, it probably would support any subsequent application for financial need to not have banked, un-used scholarship funds in the future.

---

[2] Scott concedes that he, as pro se, did file a motion for reconsideration but that the court struck the hearing because he failed to properly serve the motion.

Peggy explained that because Hailey lived with her while attending GHC and will be living with her while attending WSU, the only change is that expenses increased because tuition increased from $18,000 a year at GHC. However, Peggy explained, because Hailey used her scholarship money to cover the tuition difference, there was no need to revisit the parent contribution.

The court noted that the court had previously considered whether Hailey should spend all her money up front or save it for her part later on and had already decided that issue. Scott conceded that though the cost of tuition had increased, that increase was already covered with scholarships. That left room and board, which the court determined Scott had not shown a change in circumstances given Hailey was living in the same place.

The court found that there was not a sufficient change of circumstances to warrant a modification of the prior order and denied Scott's motion. Scott appeals.

DISCUSSION

Scott contends that the trial court abused its discretion by denying Scott's motion to modify the postsecondary educational support order. We disagree.

With some statutory exceptions not argued here,[3] "the support provisions in a dissolution decree are modifiable only on a showing of an uncontemplated,

---

[3] RCW 26.09.170(8) provides that an order of child support may be modified one year or more after it had been entered without a showing of substantially changed circumstances (a) if the order works a severe economic hardship on either party or the child, (b) if a child is still in high school, upon a finding that there is a need to extend support beyond the eighteenth birthday to complete high school, or (c) to add an automatic adjustment of support provision consistent with RCW 26.09.100.

substantial change in circumstances." In re Marriage of Shellenberger, 80 Wn. App. 71, 79-80, 906 P.2d 968 (1995) (citing RCW 26.09.170(1)).

A reviewing court will not reverse a trial court's decision about whether a substantial change of circumstances has occurred absent a manifest abuse of discretion. In re Marriage of Arvey, 77 Wn. App. 817, 820-21, 894 P.2d 1346 (1995). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Scott, relying on the trial court's own language in the postsecondary educational support order, first contends that the trial court abused its discretion by finding that a change of circumstances was required to review the order. However, the court never made such a finding. During the hearing, Scott argued that the court's previous order did not require a change of circumstances. The court explained, "I'm not saying that you haven't met a threshold or some sort of threshold to even put [the motion to modify] in front of the Court. I'm just saying: what's the basis for the Court to change, at this point?" The July 2019 postsecondary educational support order provided that the parties could bring this issue before the court by motion:

> If Hailey transitions to a four year school or other qualified program upon finishing or leaving GHC, and the parties are unable to cooperate and agree upon what the future PSES shall look like, then either parent may bring this issue back before the court upon a motion, only, for review and appropriate adjustment; a new Petition is not required.

It appears Scott conflates the court's willingness to allow the parties to motion for a hearing with what is required to grant his request to modify. The court granted

5

Scott his request for review and the hearing was held. The trial court writing that it would consider "appropriate adjustment" does not contradict the court's statutory obligation under RCW 26.09.170(1)(b), which provides that before a support order may be modified, there must be a substantial change in circumstances.

The trial court did not abuse its discretion by requiring Scott to show a change of circumstances to support his motion.

Scott next argues that the trial court failed to consider how a change in Hailey's financial resources created a situation where Scott was paying more than Hailey's need. Scott contends that Hailey obtained $16,530 in scholarships, grants, and financial aid to attend WSU in addition to $7,500 remaining in scholarships that was not applied to GHC. Scott argues the trial court abused its discretion by not first applying the available scholarships, grants, and other aid before determining Hailey's unmet need.

The trial court rejected Scott's argument explaining, "[M]y memory of this case last year is there was considerable discussion about front loading costs or spending all the money up front or saving it for her part later on. I believe that issue was decided. She is responsible for her part." The trial court was correct. At the initial hearing when the court first considered whether to order support for postsecondary educational expenses, Scott had already asked the court to insist that Hailey first use all of her scholarship money before determining the parents' contribution. The court ordered Hailey responsible for 1/3 of her expenses and that she utilize her grant and scholarship and work income to cover her share of

her college expenses. The court ordered that "*[i]f* the child uses scholarship funds that exceed her 1/3 share of the expense, then all parties will gain a proportional benefit in a net reduction of their share of the PSES obligation." (Emphasis added.)

The record establishes that the trial court had previously contemplated whether Hailey should be required to use all her scholarship funds before determining the amount of parental contributions. The trial court accounted for Hailey being in a position of having enough scholarship funds to where she could elect to cover more than her 1/3 share of the expenses, while not being obligated to do so.[4] Hailey's increase in scholarships, grants and financial aid from WSU was not an uncontemplated substantial change in circumstance.

Scott relies on Shellenberger for the proposition that the trial court should consider an adult child "to contribute to their own educations through grants scholarships, student loans" and other means. Shellenberger, 80 Wn. App. at 84. The Shellenberger court also discussed a motion to modify an order to support college education. Id. at 73. The trial court incorrectly determined that it had previously contemplated Shellenberger's disability, which was a substantial change in circumstances. Id. at 80. The trial court had ordered Shellenberger to make monthly postsecondary educational support payments that, when combined with his debt service and living expenses, exceeded his income. Id. at

---

[4] In fact, the parties agree that Hailey had used her additional scholarships to cover the difference in increased tuition costs at WSU, which Peggy explained is why she was not asking the court to revisit the parents' contribution despite the increase in tuition.

83. It was under these circumstances that we explained that on remand, at the new trial, the court, among other things, "should consider the adult children's ability to contribute to their own educations through grants, scholarships, student loans and summer and/or part-time employment during the school term." Id. at 84. Shellenberger does not help Scott, who did not claim a substantial change of circumstances impacted his ability to pay his portion supporting Hailey's college education.

Lastly, Scott dedicates much of his brief to arguing that the trial court did not properly consider factors in RCW 26.19.090(2). Scott contends that "the record is silent as to whether the trial court considered any of the [RCW 26.19.090] factors." That statute provides standards for postsecondary educational support awards and states:

> *When considering whether to order support for postsecondary educational expenses,* the court shall determine whether the child is in fact dependent and is relying upon the parents for the reasonable necessities of life. The court shall exercise its discretion when determining whether and for how long to award postsecondary educational support based upon consideration of factors that include but are not limited to the following: Age of the child; the child's needs; the expectations of the parties for their children when the parents were together; the child's prospects, desires, aptitudes, abilities or disabilities; the nature of the postsecondary education sought; and the parents' level of education, standard of living, and current and future resources. Also to be considered are the amount and type of support that the child would have been afforded if the parents had stayed together.

RCW 26.19.090(2) (emphasis added). RCW 26.19.090(2) relates to standards when considering whether to award support for postsecondary education. The trial court was not considering whether to award support for postsecondary educational expenses. In fact, the court made no changes in what it previously

8

ordered Scott or Peggy to contribute. The factors in RCW 26.19.090(2) were inherently applicable in the previous hearing when the trial court awarded postsecondary educational support. The factors were not applicable in Scott's most recent hearing where the trial court determined that there was not a sufficient change of circumstance to consider revisiting the award of support for postsecondary education.

The record supports the trial court's determination that Scott did not meet his burden of showing a sufficient change in circumstances, which is a showing of a substantial change in circumstances. The trial court did not abuse its discretion in denying Scott's motion.

We affirm.

_Coburn, J._

WE CONCUR:

_____     _Mann, C.J._